UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CIV-61736-BLOOM/Valle

ALEXSAM, INC.,

    Plaintiff/Counterclaim Defendant,

v.

WILDCARD SYSTEMS, INC.,
eFUNDS CORPORATION, and
FIDELITY NATIONAL INFORMATION
SERVICES, INC,

    Defendants/Counterclaim Plaintiffs.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Alexsam, Inc.'s ("Plaintiff") Motion to Dismiss Certain Affirmative Defenses and Counterclaims, ECF No. [18], and Plaintiff's Motion for Remand, ECF No. [19]. The Court has carefully reviewed the Motions, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, Plaintiff's Motion to Dismiss Certain Affirmative Defenses and Counterclaims is granted in part and denied in part and Plaintiff's Motion for Remand is denied.

### I. Background

Plaintiff is the owner of United States Patent No. 6,000,608 entitled "Multifunction Card System" (the "608 Patent") and United States Patent No. 6,189,787 entitled "Multifunctional Card System" (the "787 Patent") (collectively, the "Licensed Patents"). Mot. to Dismiss at 1. In 2004, Alexsam sued WildCard in the United States District Court for the Eastern District of Texas in a civil action, *Alexsam, Inc. v. FSV Payment Systems, Ltd. Et al.*, 2-03CV337 (the

"Litigation") for infringement of the Licensed Patents.[1] *Id.* In July 2005, Alexsam and WildCard settled the Litigation by executing a "Settlement and License Agreement" (the "Settlement Agreement") and stipulating to dismissal with prejudice. The Settlement Agreement includes a provision in which Alexsam granted a license to WildCard for the Licensed Patents in exchange for royalty payments by WildCard, along with definitions of the types of activities covered by the license. *See* Settlement Agreement, ECF No. [5-5]. The Settlement Agreement is to remain in full force and effect for the life of the Licensed Patent unless either party breaches any provision of the Agreement or "the claims of the Licensed Patents are held invalid or unenforceable by a court of competent jurisdiction, in which case the term of [the] Agreement shall end upon the date all appeals . . . have been exhausted." *Id.* at ¶ 10.  The Settlement Agreement also contains the following releases:

> 9. <u>Releases.</u> Alexsam and its Affiliates release WildCard, its Affiliates, officers, directors, employees, and agents from any and all claims and/or counterclaims that were or could have been brought against WildCard or its Affiliates, officers, directors, employees and agents based upon any past activity of same. WildCard releases Alexsam, its officers, Affiliates, directors, employees, and agents from any and all claims and/or counterclaims that were or could have been brought against Alexsam, or its Affiliates, officers, directors, employees and agents based upon any past activity of same.

*Id.* at ¶ 9.

On June 12, 2015, Plaintiff filed a complaint for breach of contract against Defendants/Counterclaimants WildCard Systems, Inc. ("WildCard"), eFunds Corporation ("eFunds"), and Fidelity National Information Services, Inc. ("FIS") (collectively, "Defendants") in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. Compl., ECF No. [5-1]. In that Complaint, Plaintiff alleges that Defendants failed to adhere to the express

---

[1] WildCard, although not named in the original complaint filed, was included in the Litigation as of the filing of the Third Amended Complaint.

terms of the Settlement Agreement. Plaintiff asserts that Defendants have not paid the full amount owed to Alexsam under the terms of the Settlement Agreement—specifically, that "Defendants have never paid any royalties owed to Alexsam for transactions related to pre-paid debit cards sold by any company other than Ace Hardware" and that "transactions related to Simon pre-paid debit cards are covered by the [Settlement] Agreement, and thus, Alexsam should have been and continue to be paid for such transactions in accordance with the royalty amounts set forth in the [Settlement] Agreement." Compl. at ¶ 24-25.

In their Answer, Defendants assert ten separate defenses to Plaintiff's Complaint, including Non-Practice/Non-Infringement of the Patents, Invalidity of the Patents, and Prosecution History Estoppel, as well as three counterclaims seeking declaratory judgments as to Non-Infringement of the Patents (Count I), Invalidity of the Patents (Count II), and No Breach of the License Agreement (Count III). *See* Answer, ECF No. [5-5].

On August 19, 2015, Defendants filed a Notice of Removal, ECF No. [1], removing the state court action to this Court pursuant to 28 U.S.C. § 1331, 1338, 1441, and 1454. *See* Notice of Removal. In support of removal, Defendants asserted that Plaintiff's "claims in the State Court Action depend heavily on patent issues such as patent claim coverage, prosecution history estoppel, and patent invalidity, such that a federal question is presented on the face of the Complaint despite [Plaintiff's] careful drafting." *Id.* at ¶ 3. Defendants also argue that Plaintiff terminated the Settlement Agreement in 2009, "fully precluding any basis for its Complaint and [that] the allegations of the Complaint therefore constitute a claim for patent infringement." *Id.*

Plaintiff's first Motion seeks to dismiss the patent-related affirmative defenses and counterclaims raised by Defendants in their Answer, arguing that these defenses and counterclaims have already been dismissed with prejudice. Plaintiff also maintains that

Defendant's patent-related defenses and counterclaims should be dismissed for lack of subject matter jurisdiction for failure to meet the requirements of the Declaratory Judgment Act. *See* Mot. to Dismiss.

Plaintiff also moves to remand this case to the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. According to Plaintiff, its Motion for Remand is premised, in part, on the assumption that Plaintiff's Motion to Dismiss will be granted, under 28 U.S.C. § 1447. In the alternative, Plaintiff seeks remand of its state law breach of contract claims under 28 U.S.C. § 1454(d). The Court will address each Motion in turn.

## II.  MOTION TO DISMISS

### A.  Standard of Review

#### i.  Rule 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to

dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true." ); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### ii. Rule 12(b)(1)

A court may dismiss a complaint when it lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."). Defendant here has posed a factual attack on the Court's jurisdiction.

"[I]n a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). That is, the court may look beyond the four corners of the complaint so long as they relate to jurisdictional issues, hear conflicting evidence and decide the factual issues that determine jurisdiction. *Lawrence*, 919 F.2d at 1529; *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). Further, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

Federal Circuit law precedent governs the determination of whether the court has subject matter jurisdiction in patent matters. *See Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991).

### B. Discussion

Plaintiff moves to dismiss the patent-related affirmative defenses and counterclaims raised by Defendants in their answer, arguing that these defenses and counterclaims have already been dismissed with prejudice. Plaintiff also maintains that Defendant's patent-related defenses and counterclaims should be dismissed for lack of subject matter jurisdiction for failure to meet the requirements of the Declaratory Judgment Act. *See* Mot. to Dismiss.

   i.   **Termination of the Settlement Agreement**

Defendants assert that Plaintiff terminated the Settlement Agreement in 2009, "fully precluding any basis for its Complaint and [that] the allegations of the Complaint therefore constitute a claim for patent infringement." Notice of Removal at ¶ 3. Both parties have spilled much ink on the issue of whether the Settlement Agreement is still validly in place. However, whether the Settlement Agreement was breached or terminated early is a question of fact and one that the Court cannot resolve at this stage of the pleadings.[2] For purposes of these Motions, the Court will conduct its analysis under the presumption that the Settlement Agreement is still in place.

   ii.   *Res Judicata*

---

[2] A settlement agreement is "essentially a contract and is subject to the traditional rules of contract interpretation." *Norfolk Southern Corp v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004). Plaintiff has adequately alleged the elements of a breach of contract claim under Florida law. *See J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.").

7

Plaintiff argues that Defendants, in the prior litigation in the Eastern District of Texas, "have had their opportunity to challenge the validity of the licensed patent and to argue that their products do not infringe, and then agreed to dismiss their claims with prejudice." Mot. to Dismiss at 7. *Res judicata*, or claim preclusion, "bars a subsequent claim when a court of competent jurisdiction entered a final judgment on the merits of the same cause of action in a prior lawsuit between the same parties." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998). When the parties consent to a dismissal based upon a settlement agreement, "the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Id.* "In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent"—the best evidence of which is the settlement agreement itself. *Id.* Indeed, "a judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288-89 (11th Cir. 2004).

Defendants argue, however, that their counterclaims are not precluded as "the underlying facts in this case are different than the prior action because it alleges that—after execution of the Agreement and dismissal of the previous litigation—Defendants may have underreported royalties 'from on or before June 12, 2010, to the present.'" Resp. to Mot. to Dismiss at 10, 11 (citing *Moore v. Pak*, 402 F.App'x 491, 493 (11th Cir. 1998) ("The preclusion of claims that could have been brought in earlier litigation does not include claims that arose after the original complaint was filed in the prior action, unless the plaintiff actually asserted the claim in supplemental pleadings or otherwise.") (internal quotation and citation omitted)). The principle

of *res judicata* "typically precludes not only the specific claims brought in the complaint, but any other claims that stem 'out of the same nucleus of operative fact, or is based upon the same factual predicate.'" *Norfolk*, 371 F.3d at 1290 (citing *Ragsdale v. Rubbermaid, Inc*, 193 F.3d 1235, 1239 (11th Cir. 1999)). However, when a court's dismissal is predicated upon a settlement agreement, "to preclude a wider range of matters than those specified in the [a]greement would frustrate the parties' expressed intent." *Id.* at 91 (holding that a settlement agreement releasing an oil company for contamination of a salt marsh did not preclude claims related to later contamination from leaking oil storage tanks at the same site). Whether Defendants' counterclaims are covered by and, therefore, precluded under the Settlement Agreement is beyond what this Court is required to consider and analyze on a motion to dismiss. This is a question better suited for consideration on a motion for summary judgment.

In further support of its Motion, Plaintiff cites to *Flex-Foot, Inc. v. CRP, Inc.*, in which the Federal Circuit held that

> [o]nce an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.

238 F.3d 1362, 1370 (Fed. Cir. 2001).

However, it is unclear at this stage of the litigation whether the conditions set forth in *Flex-Foot* have been met here. Although Plaintiff maintains that Defendants had ample opportunity to litigate its position before entering into the Settlement Agreement, Defendants counter that Plaintiff has failed to allege or show that Defendants had a full opportunity to conduct discovery on validity issues. Additionally, it is uncertain whether the Settlement Agreement contained a "clear and unambiguous undertaking not to challenge validity and/or

enforceability of the patent in suit." Indeed, the Settlement Agreement itself contains a clause providing for termination of the Agreement should the claims of the Licensed Patents be held invalid or unenforceable by a court of competent jurisdiction. *See* ECF No. [5-5] at ¶ 11. This Court, therefore, cannot determine, on a motion to dismiss, whether Defendants' counterclaims are precluded or contractually estopped.

### iii. Declaratory Judgment Act

#### a. Count II

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. Pursuant to the plain language, a district court's ability to grant relief under the Act is permissive, and while the Act "gives the federal courts competence to make a declaration of rights[,] it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). Accordingly, courts retain broad discretion over whether or not to exercise jurisdiction under the Act. *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008). Further, the Act confers jurisdiction only "[i]n a case of actual controversy." *See* 28 U.S.C. § 2201. This actual controversy requirement "is jurisdictional and, thus, 'a threshold question in an action for declaratory relief must be whether a justiciable controversy exists.'" *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) (quoting *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)).

Here, Plaintiff argues that because Plaintiff "has not, and cannot, accuse Defendants of infringement, Defendants' invalidity claims are not supported by any real or imminent threat to support subject matter jurisdiction under the Declaratory Judgment Act." Mot. to Dismiss at 11. However, Defendants have brought their invalidity claims as compulsory counterclaims to Plaintiff's breach of contract suit filed in state court. *See* Fla. R. Civ. P. 1.170(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."). As discussed *supra*, the Settlement Agreement itself contemplates a basis for negating the Agreement, providing that the Agreement would terminate should a court find the Licensed Patents invalid or unenforceable. Defendants have therefore sufficiently established that an actual controversy exists as to their patent invalidity claims. Although the Declaratory Judgment Act requires an independent jurisdictional basis for bringing an action in federal court, Defendants' counterclaim, as discussed *infra*, arises under patent laws and are therefore properly before this Court. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ("[T]he requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified [by the Declaratory Judgment Act]".). *See also* 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents.").

    b. *Counts I and III*

Because the Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party," the Act grants a court "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech,*

11

*Inc.*, 549 U.S. 118, 136 (2007) (citing 28 U.S.C. § 2201(a)).  Thus, when presented with a redundant counterclaim for declaratory judgment, a court may either strike or dismiss the filing.  When determining whether to exercise jurisdiction over a counterclaim, or, alternatively, whether to dismiss the same as redundant, a court must consider whether the declaratory action serves a useful purpose.  *Medmarc Cas. Ins. Co. v. Pineiro & Byrd, PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (internal quotation omitted).  In order to discern whether a declaratory action serves a useful purpose, courts should consider "whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendant[], would resolve all questions raised by the counterclaim."  *Id.* (internal quotation omitted).

Here, Count I of Defendants' counterclaims, seeking a declaratory judgment of Non-Infringement of the Patents, is repetitive of Defendants' second affirmative defense, Non-Practice/Non-Infringement of Patents. *Compare* Second Separate Defense, ECF No. [5-5] at 9-10 ("To the extent any claim of the Patents may be valid and enforceable, which Defendants expressly deny, Defendants have not practiced any claim of the Patents, willfully or otherwise . . . further, to the extent Plaintiff terminated the Agreement, Defendants have not infringed any claim of the Patents . . .") *with* Count I, ECF No. [5-5] at 21-22 ("Defendants . . . have not engaged in any activities that practice any claim of the Patents . . . so as to (a) constitute one or more licensed transaction(s) under the Agreement, and/or (b) to the extent Alexsam is claiming termination of the Agreement and effectively alleging patent infringement, to constitute infringement of any claim of the Patents."). Certainly a decision by the Court that Defendants had not infringed the Licensed Patents, as asserted in the second affirmative defense, would resolve the need for a declaratory judgment that Defendants did not infringe the Patents.

12

Additionally, Count III of Defendant's counterclaims, seeking a declaratory judgment of No Breach of the License Agreement, amounts simply to a denial of Plaintiff's claim for breach of contract. A decision that Defendants did not breach the Settlement Agreement would obviate the need for a declaratory judgment stating the same. Accordingly, the Court will dismiss both Counts I and III of Defendants' Counterclaims.

### III. MOTION FOR REMAND

#### A. Legal Standard

The party invoking this Court's jurisdiction bears the burden of proof and must support its allegations of jurisdictional facts with competent proof. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)) (further citations omitted). Although a defendant has a statutory right to remove an action to federal court, "the right of removal is strictly construed, as it is considered a federal infringement on a state's power to adjudicate disputes in its own courts." *Rietwyk v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2219730, at *1 (S.D. Fla. June 2, 2010) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)); *see also Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Thus, "when the court's jurisdiction over a case is doubtful, doubts are resolved in favor of remand." *Id.* (citing *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997)); *see also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998) ("[I]t is axiomatic that ambiguities are generally construed against removal." (citation and internal quotation marks omitted)); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

### B. Discussion

Plaintiff moves for remand of this matter to the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. According to Plaintiff, its Motion for Remand is premised on the assumption that Plaintiff's Motion to Dismiss will be granted, under 28 U.S.C. § 1447. In the alternative, Plaintiff seeks remand of its state law breach of contract claims under 28 U.S.C. § 1454(d).

Plaintiff argues that a federal question must be raised in Plaintiff's Complaint for a federal court to have subject matter jurisdiction to hear it. Indeed, Plaintiff asserts, "to find federal question jurisdiction in [Plaintiff's] breach of contract claims would turn the well-pleaded complaint rule on its head, making [Plaintiff] the master of nothing". *See* Repl. at 4 (quotations and citation omitted). However, Section 1454 (also known as the "*Holmes Group* Fix") serves as an exception to the general rule that federal question jurisdiction only exists when the plaintiff's claim includes a cause of action arising under federal law, *see Vaden v. Discover Bank*, 556 U.S. 49 (2009), by specifying that claims arising under any Act of Congress relating to patents may be removed "by any party." 28 U.S.C. § 1454(a)-(b). *See* H.R. REP. 112-98, 54, 2011 U.S.C.C.A.N. 67, 85 ("The Supreme Court ruled in 2002 [in *Holmes Group, Inc. v. Vornado Air Circulation Syst., Inc.*, 535 U.S. 826 (2002)] . . . that patent counterclaims do not give the Federal Circuit appellate jurisdiction over a case. [Section 1454] clarifies the jurisdiction of the US district courts and stipulates that the US Court of Appeals for the Federal Circuit has jurisdiction over appeals involving compulsory patent counterclaims."). Therefore, Defendants have properly removed this action if a claim asserted by either party arises under patent law.

Courts have long held that federal courts do not have exclusive jurisdiction "of all questions in which a patent may be the subject-matter of the controversy," *Gunn v. Minton*, 133

S.Ct. 1059, 1068 (2013) (quotation and citation omitted). However, several courts—in the wake of Section 1454—have recently found that a breach of contract claim raises a federal question of patent law when the court is required to determine whether the accused products infringe. *See e.g. U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (claim "required a determination of whether [Defendant's product] infringed the patents, and patent law was a necessary element of [Plaintiff's] breach of contract claim"); *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014) (breach of contract claim in which resolution of the contract claim itself required resolution of underlying issues of infringement and, potentially, determination of "the extent to which validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself"). *Cf Gunn*, 133 S.Ct. at 1068 (holding that a federal question was not raised because, "although the courts must answer a question of patent law to resolve [Plaintiff's] legal malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of [Plaintiff's] patent."). Here, Defendant's invalidity counterclaim as well as its patent-related affirmative defenses, including non-infringement, require the Court to determine whether the Licensed Patents are valid on grounds such as the newly articulated standard set forth in *Alice Corp. Pty v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), as well as to apply patent claim terms to the accused services to determine if they are subject to the Settlement Agreement. Accordingly, Defendants have properly removed the instant action to this Court as arising under patent law pursuant to Section 1454.

### C. Supplemental Jurisdiction

Plaintiff requests that its breach of contract claim be severed and remanded. *See* 28 U.S.C. § 1454(d) ("If a civil action is removed solely under this section, the district court may . .

. remand any claims within the supplemental jurisdiction of the district court under section 1367."). Section 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, Plaintiff's breach of contract claims and Defendants' invalidity counterclaim clearly form part of the same case or controversy. Moreover, none of the exceptions to supplemental jurisdiction provided under Section 1367(c) apply. Plaintiff's breach of contract claim does not raise a "novel or complex issue of State law" nor does it "substantially predominate" over Defendants' invalidity counterclaim. This Court has not dismissed all of Defendants' counterclaims and does not find any other "compelling reasons for declining jurisdiction." *See* 28 U.S.C. § 1367(c). Accordingly, the Court finds it proper to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and does not find adequate justification to sever and remand those state law claims as permitted under Section 1454(d). Plaintiff's Motion to Remand is therefore denied.

### D.  Motion for Costs

Plaintiff asserts that Defendants should pay Plaintiff's costs of having to move for remand. *See* Mot. for Remand at 15. As the Court has found in favor of Defendants and has denied Plaintiff's Motion for Remand, Plaintiff's request to be awarded costs is accordingly denied.

## IV.  SERVICE OF PROCESS

In their Counterclaims, Defendants assert that Plaintiff failed to properly serve Defendant Fidelity National Information Services, Inc. ("FIS"). Specifically, Defendants maintain that Plaintiff's representative wrongly served a different entity, Fidelity National Financial, Inc.

("FNF"), and though they "promptly informed" Plaintiff of this error, Plaintiff failed to perfect service on FIS. ECF No. [5-5] at 16, ¶ 11. On August 20, 2015, this Court entered an Order on Post-Removal Procedures, ECF No. [4], which required Plaintiff to file a notice informing the Court as to the status of service of process on FIS. Plaintiff filed a notice, asserting that service on FIS was sufficient, arguing that FIS and FNF share the same address to which the Summons and Complaint were delivered; that FNF is the former parent company of FIS; and that it is clear FIS has received the Summons and Complaint as Defendants admit that FIS owns the other two Defendants. Plaintiff also contends that even if there were some defect in the service of process, Defendants have waived any objection to personal jurisdiction by seeking affirmative relief in both the state court and this Court, and by jointly filing their Answer, Affirmative Defenses, and Counterclaims. Defendants counter that service was not sufficient and Defendants did not waive service. *See* ECF No. [17].

Under Florida law, "every defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading," with the exception of a number of specific defenses, including personal jurisdiction, which may be made by motion at the option of the pleader. Fla. R. Civ. P. 1.140(b). With a few exceptions, a party waives all defenses and objections that are not presented either by motion or in a responsive pleading. 1.140(h)(1)-(2). In their Answer, Defendants' First Separate Defense—Lack of Jurisdiction—addresses the asserted lack of jurisdiction over Plaintiff's Complaint, but not personal jurisdiction. Defendants do assert within their Counterclaim that service was not proper. *See* Counterclaims, ECF No. [5-5], at ¶ 11. However, Defendants never filed a motion to dismiss or otherwise sought relief from the state court for lack of personal jurisdiction. The Defendants' efforts in seeking affirmative relief in this action negate any claim that it has not properly submitted itself to the jurisdiction of the

court. Accordingly, the Court finds that Defendant FIS has waived service and this Court properly asserts personal jurisdiction over FIS.[3]

## V. CONCLUSION

For the foregoing reasons and as detailed above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Dismiss Certain Affirmative Defenses and Counterclaims, ECF No. [18], is **GRANTED IN PART** and **DENIED IN PART**. Count I and Count III of Defendants' Counterclaims are **DISMISSED**.

2. Plaintiff Alexsam's Motion for Remand, ECF No. [19], is **DENIED**. Plaintiff's Motion for Costs is **DENIED**.

3. Plaintiff shall file its Answer to Defendants' Counterclaim on or before **December 6, 2015**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 19th day of November, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[3] It is also notable that Defendants offered to Plaintiff a waiver of service in exchange for an extension for all Defendants to respond to the Complaint, s*ee* ECF No. [17-1], to which Plaintiff purportedly did not respond. While the Court commends Defendants' amiable attempt, common sense dictates that Defendants' acknowledgement of the attempted service and offer of waiver indicates that the practical effect of service of process—namely, notice of the suit and the claims against Defendants—have not been frustrated here. The Court, therefore, accepts the invitation the Defendant initially offered and, therefore, declines to expend further resources on the issue.